**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**LANDRIUS TYREE BOOSE,**

           **Plaintiff,**

**v.**                                                    **Case No. 3:18-cv-01480**

**BRITTANY ADKINS;
WESTERN REGIONAL JAIL; and
ADMINISTRATOR WOOD,**

           **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

          In November 2018, Plaintiff, Landrius Tyree Boose ("Boose"), proceeding *pro se*, filed a Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 2). Pending before the court is Defendants' combined Motion to Dismiss Complaint or for Summary Judgment, (ECF No. 49). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

          For the reasons set forth below, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' Motion for Summary Judgment, (ECF No. 49); **DISMISS** the complaint, as amended, **with prejudice**, (ECF No. 2, 23); and **REMOVE** this matter from the docket of the Court.

## I.     Relevant Facts and Procedural History

### A. Procedural History

In November 2018, Boose filed a complaint pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated by employees of the Western Regional Jail and Correctional Facility ("WRJ"). (ECF No. 2). Boose claims that on Tuesday, October 23, 2018, Correctional Officer, Brittany Adkins ("Adkins"), assaulted him. (*Id.* at 4). Boose states that Adkins was overseeing medication distribution and informed the inmates that she was in a hurry and if they did not acquire their medications quickly enough, they would not receive them. (*Id.*). Due to Adkins's insistence that he hurry up, Boose was unable to fill his cup with water for the purpose of taking his medication. Boose explains that when he approached the medication dispensation cart, both Adkins and the nurse manning the cart gave him permission to return to his cell with the medication in order to get water. (*Id.*).

Adkins followed Boose to his cell and began "rushing" him to take his medication while Boose was filling his cup with water. (*Id.* at 4-5). As Boose started taking his medication, Adkins took his cup from him and would not let him get more water. (ECF No. 2 at 5). Boose states that Adkins "assalted" [sic] him "by taking the cup from me while I was drinking to finish taking my meds." (*Id.*). In response to what he perceived as an assault, Boose followed Adkins out of his cell and "pointed" at her to "tell her she was wrong for doing that and for assaulting me." (*Id.*). Adkins told Boose to "get out of her face" although Boose believed he was not in her face. Adkins then punched Boose in the chest. Boose told her not to hit him again, and Adkins responded by hitting him twice more. Boose then "grabbed her by her shirt to hold her back," and to stop her assault. (*Id.*). Adkins continued to try to strike Boose until other officers intervened and

separated the two. (*Id*. at 5-6).

Boose states that the responding correctional officers would not listen to Boose's explanation, but instead "put me on two man and charged me for assault." (ECF No. 2 at 6). Boose asserts that he submitted a grievance to Administrator Wood, ("Wood"), which was denied. Boose "wrote out an appeal for the assault charge two weeks ago and gave it to Sergant [sic] Brewior," but did not receive a response by the time he filed his complaint. (*Id*.). Boose further states that Corporal Akers informed him that he was not the first inmate Adkins had "done this to," and that Adkins was "out of control." (*Id*.). Finally, Boose asserts that during a hearing, Adkins testified that she did assault Boose inside his cell. (*Id*.).

On the section of the form that asks about administrative remedies, Boose explains that he filed a grievance related to the assault and an "appeal for my write up also." (*Id*. at 3). Boose asserts that prison staff "will not/have not given me an appeal which was filed two weeks ago," and Wood "just stated what the incident was and offered no help." (*Id*.). For relief, Boose requests monetary compensation and that the WRJ be reprimanded for allowing Adkins to assault him. Boose also requests that Adkins be fired. (*Id*. at 5). Boose named Adkins, Wood, and the WRJ as Defendants in his complaint. (*Id*. at 1).

On January 2, 2019, Defendants submitted an Answer to the complaint, asserting a number of defenses and contending that Boose's complaint should be dismissed. (ECF No. 10). On March 6, 2019, the parties attended a status conference wherein a discovery schedule was created and Defendants were ordered to provide Boose with, among other things, copies of all administrative grievances, responses to grievances, disciplinary records, reports, investigative materials, statements, video recordings, photographs, or

other documents related to the incident. (ECF No. 14). Following a Motion to Compel submitted by Boose, Defendants, on May 24, 2019, entered a Notice of Compliance, asserting that they had provided all required documents to Boose. (ECF Nos. 16, 21).

On May 28, 2019, Boose submitted an Amended Complaint, which added as a Defendant, Lieutenant Flemings ("Flemings"). (ECF No. 23). Boose states that Flemings and other jail employees "repeatedly denied" Boose the ability to speak to his counsel in order to apprise his counsel of the unconstitutional assault. (*Id.* at 2). Boose asserts that this denial constituted a violation of his "Sixth, Eighth, and Fourteenth Amendment protections under the Constitution." (*Id.*). Boose believes that Flemings initiated and directed this denial of Boose's right to contact his attorney. (*Id.*). Boose further alleges that his due process rights were violated when an appeal of "the non-existent assault" received an "untimely" response. (*Id.*).

On June 3, 2019, Defendants Adkins, the WRJ, and Wood, submitted an Answer to the Amended Complaint, asserting a number of defenses and contending that it failed to state a claim upon which relief could be granted. (ECF No. 24). Also on June 3, 2019, Flemings submitted a Motion to Dismiss the Complaint and an accompanying Memorandum of Law in support. (ECF Nos. 25, 26). Flemings contended that the complaint against him should be dismissed as the right to counsel under the Sixth Amendment to the United States Constitution ("Sixth Amendment") only attached to criminal proceedings, and, consequently, Boose did not have a constitutional right to court-appointed counsel with which Flemings could have unlawfully interfered. (ECF No. 26 at 3).

On June 20, 2019, Boose filed a Response to Flemings's request for dismissal. (ECF No. 29). In the response, Boose asserted that Flemings "showed deliberate

indifference" to Boose by "hindering and obstructing [him] from being able to file the necessary electronic grievances and follow up appeals and to have adequate access to the Law Library, Phones, and the Jail Computer System." (*Id.* at 1). Flemings further instructed other staff members to deny Boose access to these services according to Boose. Additionally, Flemings failed to conduct a proper investigation of the incident involving Adkins. (*Id.* at 1-2). Boose described an incident in which he asked to call his attorney and Flemings replied: "Hell no, write that shit on some toilet paper!" (*Id.* at 2). On June 27, 2019, Defendants entered a Reply to Boose's response, reiterating that Boose failed to state a plausible claim for relief. (ECF No. 30).

On July 12, 2019, Defendants submitted a Motion to Continue the deadline for the completion of discovery. (ECF No. 31). In support, Defendants noted that Boose had proved unresponsive to discovery requests and had not himself served any discovery requests on Defendants. (*Id.* at 1). The undersigned granted Defendants' request, extending the deadlines for discovery and dispositive motions on July 15, 2019. (ECF No. 32).

On September 3, 2019, Defendants filed a Motion to Continue and for Protective Order, asserting that additional time was needed due to Boose's dilatory and insufficient responses to discovery requests. (ECF No. 39 at 1-2). Defendants additionally requested that, given Flemings's pending motion to dismiss, he be granted a protective order delaying his responsibility to respond to discovery requests until the resolution of that motion. (*Id.* at 3). On September 6, 2019, the undersigned entered an Order granting Defendants' request for continuance, but denying the request for a protective order. (ECF No. 40).

On October 8, 2019, the undersigned entered Proposed Findings and Recommendation ("PF&R") with respect to Flemings's motion to dismiss, recommending that the motion be granted. (ECF No. 45). The undersigned concluded that Flemings was correct—Boose failed to assert a viable claim as "Boose did not have a constitutional right to confer with a lawyer concerning the alleged assault, subsequent events, or instant § 1983 case." (*Id.* at 6). The undersigned concluded that while the Sixth Amendment's guarantee that defendants shall be entitled to counsel as protection against criminal prosecution did not apply to Boose's complaint, which was civil in nature, Boose's complaint could be construed as asserting a denial of his constitutional right to "meaningful access to the courts." (*Id.* at 7). However, as Boose failed to allege that "he suffered any actual injury or specific harm to any litigation efforts as a result of Flemings refusing to allow him to contact his lawyer," his claim regarding denial of access to the court must also fail. (*Id.* at 8).

The undersigned further determined that Boose had not set out a valid claim regarding Flemings's alleged interference with his access to the law library, mail, telephone, and administrative grievance procedures, both because his complaint lacked a "factual foundation to maintain an action against Flemings," and because he failed to allege a violation of any identifiable constitutional right. (*Id.* at 10-12). Next, the undersigned determined that Boose's claim related to Flemings's purportedly insufficient investigation of the incident with Adkins was not viable, because "Boose did not have a federal or constitutional right to any particular type of investigation by Flemings." (*Id.* at 12). Finally, the undersigned concluded that Boose's claim that Flemings should bear supervisory liability for various allegedly unlawful actions taken by other prison employees should be dismissed as the complaint lacked "any factual

6

foundation upon which Flemings could be held liable in his capacity as a supervisor." (*Id.* at 15).

As neither party submitted any objections to the PF&R recommending Flemings's motion to dismiss be granted, this Court adopted the PF&R in a Memorandum Opinion on October 31, 2019, and Flemings was accordingly dismissed from the case as a defendant. (ECF No. 46). On November 21, 2019, the remaining defendants submitted a combined motion and memorandum requesting dismissal or summary judgment in their favor. (ECF Nos. 49, 50). Defendants first assert that both the WRJ, and claims against Defendants in their official capacities, should be dismissed from the case due to sovereign immunity and the fact that they are not properly considered "persons" under § 1983. (ECF No. 50 at 4-8). Next, Defendants argue they are entitled to dismissal of any claims raised against them in their personal capacities due to the doctrine of qualified immunity. (*Id.* at 10). Defendants believe that Boose fails to successfully state a claim against them in their personal capacity, because he has provided no factual allegations regarding specific actions taken by the individual defendants that would amount to a constitutional violation. (*Id.* at 8, 10).

Defendants additionally allege that the complaint should be dismissed due to Boose's failure to properly exhaust his administrative remedies. (*Id.* at 11). In support of this contention, Defendants assert that Boose admitted as much in a response to an interrogatory he supplied, and that Boose's argument the grievance process was unavailable to him is meritless. (*Id.* at 13-14). Defendants state that Boose's claim alleging Adkins assaulted him in violation of the Eighth Amendment to the United States Constitution ("Eighth Amendment") is contradicted by videotaped footage of the incident and should be dismissed. (*Id.* at 18). Finally, Defendants argue that Boose

cannot succeed in establishing a violation of his right to counsel, or access to the courts. (*Id.* at 18-20).

On December 2, 2019, Boose filed a motion requesting more time to submit a response to the combined motion for dismissal, explaining that his correctional facility was on lockdown, impeding his ability to prepare a response. (ECF No. 53 at 1). The undersigned granted the request and gave Boose until January 31, 2020 to submit a response. (ECF No. 54). On January 14, 2020, Boose requested a second extension of time to prepare a response, stating that he was still on lockdown, and that he was in the process of being transferred to a different facility. (ECF No. 55 at 1). On January 15, 2020, Defendants submitted an objection to Boose's request, arguing that Boose had already been granted ample time to file a response. (ECF No. 56 at 2). The undersigned granted Boose's request for an extension on January 16, 2020, giving him until February 7, 2020 to complete a response. (ECF No. 57).

On January 24, 2020, Boose submitted a letter, requesting a stay of the case as he was being transferred to a different federal facility. (ECF No. 58). Defendants objected to this request, believing that Boose had been granted adequate time to prepare a response, and arguing that his "continual stalling is a clear indication that he is unable to demonstrate a genuine issue of material fact in his response as the video surveillance footage undeniably shows his blatant attack on … Adkins." (ECF No. 59 at 2). On February 7, 2020, Boose again requested more time to prepare a response to Defendants' request for dismissal, explaining that he had been transferred to a new facility that was on lockdown, and he was currently unable to access his legal materials or a law library. (ECF No. 61). On February 10, 2020, the undersigned entered an Order denying Boose's request for a stay, but granting his request for an extension of time.

(ECF No. 62). Boose was given until March 13, 2020 to complete his response, and warned that, as he had already received multiple extensions of time to respond, further requests for extensions would likely be denied. (*Id*. at 1).

On March 18, 2020, Boose's response to Defendants' request for dismissal was entered on the docket. (ECF No. 65). In the four-page document, Boose asserts that Adkins produced a false incident report, which misrepresented her confrontation with Boose on October 23, 2018. (*Id*. at 1). Boose argues that the recorded video surveillance reveals that Adkins struck Boose on the face while attempting to take his cup from him in his cell. (*Id*. at 1). Boose followed Adkins after she left his cell, and she then began striking him and "bullcharging" at him. (*Id*.). Boose denies ever striking Adkins and asserts that he only attempted to "push" her away from himself.  Boose states that in doing so, he was only "trying to minimize the assault by [Adkins] and report her unexceptable [sic] use of force to her supervisor(s)." (*Id*. at 2). Boose believes that the video surveillance reveals he is "the only victim here in this case." (*Id*.). Boose states that Adkins has a history of using excessive force against inmates and proceeds to cite to other cases filed against Adkins, which raise similar claims of improper behavior. (*Id*. at 2-3). Boose argues that the "administration" is clearly at fault, because it failed to properly investigate the issue by neglecting to take photographs of the involved parties, and additionally, for "underminding [sic] the [cruel nature] of an employ[ee]." (*Id*. at 3).

On March 31, 2020, Defendants submitted a Reply to Boose's response in which they assert that Boose "fails to address the majority of the arguments made in the Defendants' Motion, namely those concerning sovereign immunity, qualified immunity, the definition of "person" under U.S.C. § 1983, the failure to exhaust administrative remedies, and the lack of any Sixth Amendment violations." (ECF No. 66 at 2).

9

Defendants contend that the response further contains "blatant misstatements and misrepresentations of evidence put forth in this matter," and improperly includes "unsupported hearsay evidence" in the form of other lawsuits filed against Adkins. (*Id.*). Accordingly, Defendants ask that their request for dismissal of the complaint be granted. (*Id.* at 5).

Boose supplied a Reply to Defendants' submission, contending that he was "denied any grievence [sic] to report this matter through [the] proper chain of commands." (ECF No. 67 at 1). Boose further accuses staff members at the WRJ of "using improper timeframes to dismiss a claim." (*Id.*). Boose again emphasizes that he was struck by Adkins while in his cell in violation of the constitutional proscription against cruel and unusual punishment. (*Id.* at 1-2). Boose makes additional requests for relief, asking that Adkins and Wood be removed from their positions, and that proper training programs for staff at the WRJ be instituted. (*Id.* at 3). Finally, Boose requests $1,000,000.00 in damages. (*Id.*).

### B. Supporting evidence provided by Defendants

Defendants submitted two items of evidence in support of their dispositive motion. The piece of evidence fundamental to Defendants' request for dismissal or summary judgment is a videotaped recording, which purportedly captures the altercation between Adkins and Boose that underlies the complaint. Boose does not dispute the authenticity or accuracy of the videotape provided by Defendants, but instead argues that the videotape, in fact, corroborates his claim that Adkins used unconstitutionally excessive force. (ECF No. 65 at 1).

The videotape begins at 10:24:32 a.m. and includes two frames. The frames show a pod with two tiers of cells overlooking a dayroom, and a metal staircase at one side of

the cells leading up to a metal walkway running in front of the second tier of cells. In the corner of the dayroom is a doorway occupied by a medical dispensary cart, behind which a prison staff member is located to dispense medications. The medication dispensary area is cordoned by a border of red paint or tape. Adkins is visible standing in the corner of the dayroom within the demarcated area of the medical dispensary cart at the beginning of the recording on the section 2-high frame, which overlooks the dayroom from above. The second frame, labeled section 2-low, depicts the lower and upper tier of cells and the stairway leading up to the second tier of cells.

At 10:24:52, Adkins begins to gesture and talk to someone off-camera, toward the cells. Boose can be seen on the section 2-low frame responding to Adkins as he leaves his lower-tier cell and approaches the medication dispensation cart. Adkins makes a beckoning motion, apparently instructing Boose to come to the medication dispensation cart. Boose enters the section 2-high frame at 10:25:10 and approaches Adkins while holding a white cup. Adkins and Boose confer with each other by the medication cart and Adkins points at Boose's cup. Boose then withdraws an item from the medication cart and strides off-camera, followed by Adkins.

The two reappear on the section 2-low frame at 10:25:52. At 10:25:54, Adkins is seen speaking with Boose as they walk toward his cell. Boose turns away from Adkins and opens his cell door, while Adkins follows him. The two appear to be talking as Boose enters his cell. Once inside the cell, the view of Boose is partially obscured; however, he is facing Adkins and continues to speak with her. Adkins remains just outside of Boose's cell. At 10:26:28, Boose steps further back into his cell, still facing Adkins, and she enters the threshold of the cell as they continue to speak with one another. Boose is largely hidden from the view of the camera at this point, although his general position can be

discerned, and he appears to be facing Adkins, holding his cup. At 10:26:36, Adkins swiftly moves her outstretched arm in Boose's direction, but where her hand ultimately lands is not visible on the tape. Adkins then quickly retreats from Boose's cell. Adkins attempts to shut the cell door behind her as she leaves, but Boose, clearly upset and protesting, pushes the door open and follows Adkins.

Adkins, aware that Boose is following her, turns to face him as he continues to press toward her, coming extremely close to her. Adkins gesticulates toward Boose's cell, putting a finger on his chest and apparently ordering him to return to his cell. At 10:26:42, Adkins places both hands on Boose's chest and lightly shoves him backward, creating space between herself and Boose. Adkins continues to point to Boose's cell, as she speaks to him. Boose gestures angrily, and again steps toward Adkins, prompting her to push him backward a second time at 10:26:44. Adkins continues to push Boose in the direction of his cell, while he resists, trying to drive Adkins backward as he scolds her. At 10:26:50.130, Boose delivers what appears to be a forceful shove to Adkins, causing her head to rock backward. Boose then in quick succession strikes, or pushes, Adkins with his left arm, propelling her into a metal table in the dayroom. In response, Adkins swings at Boose, but misses as he strikes her with his left arm at 10:26:53. Adkins steps toward Boose, and he again forcefully shoves Adkins back with one arm. At 10:26:59, Adkins steps toward Boose with her arm outstretched at her side, pointing at the metal table, and the two argue with one another until 10:27:02 when two other correctional officers arrive and escort Boose off-frame.

Defendants additionally attached an Incident Report prepared by Adkins on October 24, 2018, which describes the altercation in question. (ECF No. 49-2). In the report, Adkins states that on October 23, 2018, she was overseeing medication

distribution at the WRJ. Boose approached the medication dispensation cart, but did not have water in his cup to take his medication. (*Id.* at 1). Adkins directed him to go get water and he "refused" because he stated the water fountain was not working. Boose then went to his cell with the medication and obtained water to take the medication. Adkins states Boose "kept turning on his hot water," which made her concerned he would throw hot water at her. (*Id.*). Adkins responded to this concern by taking Boose's cup and exiting his cell. Boose followed her from the cell, and "came at" her. Adkins responded to this perceived threat by deploying "a palm heel strike to his shoulder to create distance between him and myself." (*Id.*). Boose then struck Adkins in the face three times while Adkins ordered him to return to his cell until other correctional officers intervened. (*Id.*).

## II.    **Standard of Review**

Defendants request that Boose's complaint be dismissed under Federal Rule of Civil Procedure (12)(b)(6), or, alternatively, move for summary judgment under Rule 56(a). (ECF No. 22). The Federal Rules of Civil Procedure provide that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12; *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Here, Defendants attached videotape surveillance evidence, as well as an incident prepared by Adkins, to their motion requesting the case be dismissed. (ECF Nos. 49-1, 49-2). Boose was notified that, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), he had the "right and an obligation to file a response to the combined motion for summary judgment and motion to dismiss filed by Defendants, submitting supporting affidavits or statements subject to the penalties of perjury; exhibits; or other legal or factual

material supporting his position in the case." (ECF No. 51 at 1). Accordingly, the undersigned will consider Defendants' request that Boose's complaint be dismissed as a motion for summary judgment.

Summary judgment is proper under Rule 56 when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

If the moving party meets this burden, then the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322, n.3. The nonmoving party must do more than rely upon the allegations or the denial of allegations contained in his pleadings to defeat a motion for summary judgment; instead, he must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. Concrete evidence includes "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must not resolve disputed facts, nor weigh the evidence. *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1239 (4th Cir. 1995). Instead, the court must accept as true the facts asserted by the nonmoving party and review the evidence "draw[ing] all justifiable inferences" in its favor. *Masson v. New*

14

*Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991).

Even still, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). Thus, while any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co,* 475 U.S. at 587, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson,* 477 U.S. at 249-50).

## III.    <u>Discussion</u>

Boose's complaint is filed pursuant to 42 U.S.C. § 1983, which provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 171-72 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of state law. 42 U.S.C.

§ 1983; *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Sullivan,* 526 U.S. at 50.

### A. Eighth Amendment Claim

Boose's complaint alleges that he was the victim of unconstitutionally excessive force and a subsequent cover-up of the violation orchestrated by prison staff. As the merits of his claims against Defendants rests primarily on the premise that he was the victim, rather than the perpetrator, of an assault, the undersigned will first consider the complaint's central claim; that Adkins deployed unconstitutionally excessive force in violation of the Eighth Amendment's proscription against cruel and unusual punishment.

### 1. Prior lawsuits

As an initial matter, Defendants object to Boose's reference to other cases filed in this Court making similar accusations against Adkins. (ECF No. 66 at 4). Defendants believe this evidence is "improper hearsay" and would be inappropriate to consider in a motion for summary judgment, because Boose lacks personal knowledge regarding the facts of the other lawsuits. (*Id.*). Defendants are correct that the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has held that "inadmissible hearsay" is not "supportive of an opposition to a motion for summary judgment." *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995). The Fourth Circuit explains that "[i]n opposing summary judgment, the non-

moving party must 'set forth such facts as would be admissible in evidence." *Merck-Medco Managed Care, LLC v. Rite Aid Corp.*, 201 F.3d 436 (4th Cir. 1999) (quoting Fed. R. Civ. P. 56(e)). However, Defendants are mistaken in assuming that evidence provided through other civil rights cases filed against the same defendant is *necessarily* inadmissible as hearsay unless the plaintiff himself has "personal knowledge regarding the facts" disclosed in the other cases. (ECF No. 66 at 4). Evidence is inadmissible when the individual, who actually makes a proffered statement, lacks personal knowledge of the facts offered, but parties are entitled under Rule 56 to submit properly sworn affidavits by third parties with personal knowledge of the information contained in their affidavits. For example, Boose would be permitted to submit an affidavit in which another inmate testified under oath that he personally overheard Adkins bragging about assaulting Boose, even though Boose himself had not witnessed this exchange and thus lacked "personal knowledge" of the conversation.

However, Federal Rule of Evidence 404 does bar Boose's attempt to oppose Defendants' motion for summary judgment with evidence that other civil rights lawsuits were filed against Adkins. Rule 404 prohibits the admission of evidence regarding a person's "character or character trait" in order "to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Additionally, a litigant may not introduce "[e]vidence of a crime, wrong, or other act ... to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Courts that have considered similar issues have generally held that Rule 404 prohibits the introduction of the prior disciplinary history or past lawsuits filed against law enforcement officers or correctional staff when the evidence is being introduced to raise the inference that the

defendant acted in conformity with his or her past behavior. *See Luka v. City of Orlando,* 382 F. App'x 840, 842 (11th Cir. 2010) ("[The plaintiff] sought to establish liability on the part of [the defendant] by introducing this evidence to prove [the defendant] characteristically engaged in the use of excessive force and acted in conformity with that characteristic in this case. This is precisely the inference that Rule 404(b) will not allow."); *see also Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) ("[The plaintiff] first contends that the prior complaints showed [the defendant's] 'sadistic,' 'malicious,' 'aggravated state of mind.' This proffer amounts to no more than a veiled attempt to do what Rule 404(b) expressly prohibits—introducing evidence of bad acts to show the defendant's propensity to commit such acts."); *Jones v. Sandusky Cty., Ohio*, 96 F. Supp. 3d 711, 718–19 (N.D. Ohio 2015), *aff'd*, 652 F. App'x 348 (6th Cir. 2016) (finding that prior disciplinary history was "character evidence, inadmissible under Federal Evidence Rule 404(a), and past-bad-acts evidence, inadmissible under Rule 404(b)."); *Graniczny v. City of El Paso*, Tex., 809 F. Supp. 2d 597, 604 (W.D. Tex. 2011) (past disciplinary history impermissible character evidence); *Franklin v. Messmer*, 111 F. App'x 386, 388 (6th Cir. 2004) ("As [the plaintiff] wanted to enter [the defendant's] prior conduct to demonstrate his underlying intent in arrests, *i.e.*, his propensity for excessive force, the evidence was properly excluded."); *Bryant v. Serebrenik*, No. 15CV3762ARRCLP, 2017 WL 713897, at *3 (E.D.N.Y. Feb. 23, 2017) ("For this reason, district courts in this circuit have excluded evidence of unsubstantiated civilian complaints offered under Rule 404(b)."); *Montoya v. Shelden*, 898 F. Supp. 2d 1279, 1300 (D.N.M. 2012) (finding that, while probative, evidence of past § 1983 lawsuits filed against the defendant was too prejudicial under FRE 403); *but see Lewis v. City of Albany Police Dep't,* 547 F. Supp. 2d 191, 200 (N.D.N.Y. 2008), *aff'd*, 332 F. App'x 641

18

(2d Cir. 2009) (finding that past complaints were relevant to show defendant's identity and "motivation and intent" to use excessive force); *Casares v. Bernal*, 790 F. Supp. 2d 769, 776–77 (N.D. Ill. 2011) ("This court recognizes that there have been excessive force cases in this district in which the court allowed evidence of an officer's prior use of excessive force to come in to demonstrate the officer's intent to commit assault and battery in the case at bar.") (internal citations and quotations omitted).

While Boose does not explicitly identify his purpose in submitting evidence of prior § 1983 cases against Adkins, the context indicates his intent to offer them as evidence of Adkins's propensity to exert excessive force, a use likely prohibited by Fed. R. Evid. 404.[1] In any event, even when considering Adkins's prior lawsuits, the undersigned concludes, as explained more fully below, that a reasonable jury would not conclude that Adkins, in this instance, violated the Eighth Amendment.

### 2. Eighth Amendment law

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment" to the United States Constitution. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (internal citations omitted). The use of excessive force against an inmate by a correctional officer plainly violates the Eighth Amendment's cruel and unusual punishment clause, *Wilkins v. Gaddy,* 559 U.S. 34 (2010), and is cognizable under 42 U.S.C. § 1983. To establish a constitutional claim of excessive force against Adkins, Boose must show that she "inflicted unnecessary and wanton pain and suffering." *Taylor v. McDuffie,* 155 F.3d 479, 483 (4th Cir.1998)

---

[1] The undersigned additionally notes that the probative value of these prior lawsuits is undermined by the fact they have both since been dismissed. *See Canterbury v. Aldrage et al,* Case No. 3:18-cv-01530 (S.D.W.Va. Dec. 20, 2018) at ECF No. 41; *Turley v. Western Regional Jail,* Case No. 3:18-cv-01474 (S.D.W.Va. Nov. 29, 2018) at ECF No. 41.

(quoting *Whitley v. Albers,* 475 U.S. 312, 320 (1986)). This claim contains both an objective and a subjective component.

To satisfy the objective component, Boose must demonstrate that the force applied by Adkins was "sufficiently serious." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). "This is not a high bar, requiring only something more than '*de minimus*' force" *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019) (quoting *Hudson v. McMillian,* 503 U.S. 1, 10 (1992)). While "mere threats or verbal abuse, without more, do not state a cognizable claim under § 1983," *Wilson v. McKeller,* 254 F.App'x. 960, 961 (4th Cir. 2007) (citing *Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992)), "'nontrivial force'" is sufficient to state a claim under the Eighth Amendment. *Brooks,* 924 F.3d at 112 (quoting *Wilkins,* 559 U.S. at 39).

With respect to the subjective element of an excessive force claim, Boose must show that Adkins "acted with a sufficiently culpable state of mind." *Williams,* 77 F.3d at 761. This is a "demanding standard," because the "state of mind required ... is wantonness in the infliction of pain." *Brooks,* 924 F.3d at 112. When a prison official "maliciously and sadistically use[s] force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evident." *Wilkins,* 559 U.S. at 37 (explaining that the "core judicial inquiry" is whether the force "was applied ... maliciously and sadistically to cause harm.") (quoting *Hudson,* 503 U.S. at 7). Prison officials act with "a permissible motive—not only when they confront immediate risks to physical safety, but also when they attempt to preserve internal order by compelling compliance with prison rules and procedures." *Brooks,* 924 F.3d at 113 (citation and internal markings omitted). "But corrections officers cross the line into impermissible motive—using force maliciously and for the very purpose of causing harm—when they

inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." *Id.* (internal citations and markings omitted).

When considering an excessive force claim, the court must ask if "the force applied was in a good faith effort to maintain or restore discipline" or was simply for the purpose of causing injury. *Taylor,* 155 F.3d at 483. To make this determination, the court should examine the following factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force used: (3) the extent of the injury inflicted; and (4) the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Chisolm v. Assoc. Warden Thompson*, No. 4:15-CV-01806-RBH, 2016 WL 4394276, at *7 (D.S.C. Aug. 18, 2016) (quoting *Whitley*, 475 U.S. at 321). "While excessive force does require malicious intent, it does not require that the prisoner victim suffer a 'significant injury.' ... [A] prisoner who suffers a minor, but malicious, injury may be able to prevail on an excessive force claim." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017).

Nevertheless, the lack of serious injury is not irrelevant to the Eighth Amendment inquiry. *Hudson*, 503 U.S. at 7 ("The absence of serious injury is ... relevant to the Eighth Amendment inquiry, but does not end it."). The extent of the injury provides some indication as to the amount of force applied. *Wilkins*, 559 U.S. at 37. "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* (quoting *Hudson*, 503 U.S. at 9). "An inmate who complains of a push or a shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Hudson*, 503 U.S. at 9; *see also Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016).

While the parties dispute whether Adkins deployed constitutionally excessive

force against Boose on October 23, 2018, Adkins submitted a videotape of the incident which she contends blatantly contradicts Boose's version of events. (ECF No. 50 at 17). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Boose has not challenged the authenticity of the videotape or suggested it does not accurately depict the incident in question; instead, he argues the videotape substantiates his description of the altercation. (ECF No. 65 at 1). The Fourth Circuit has held that when "the record contains an unchallenged videotape capturing the events in question, [the court] must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

The Fourth Circuit has recently clarified that the deviation from the general rule of summary judgment announced by the Supreme Court of the United States ("Supreme Court") in *Scott*, which allows a district court to resolve a factual dispute in favor of the moving party where the record is unequivocal, is "the exception, not the rule." *Harris v. Pittman*, 927 F.3d 266, 276 (4th Cir. 2019). The holding "does not 'abrogate the proper summary judgment analysis, which ... usually means adopting ... the plaintiff's version of the facts.'" *Id.* (quoting *Witt v. W. Va. State Police, Troop* 2, 633 F.3d 272, 276 (4th Cir. 2011)). Accordingly, courts should not "reject a plaintiff's account on summary judgment whenever documentary evidence, such as a video, offers *some* support for a governmental officer's version of events." *Witt*, 633 F.3d at 276. Rather, it is only when video evidence "'blatantly contradict[s]' a plaintiff's account," that a district court should adopt the moving party's version of events. *Id.* at 276-77 (quoting *Scott,* 550 U.S. at 380).

With this relevant legal precedent in mind, the undersigned will now turn to Adkins's argument that she is entitled to summary judgment based on the unchallenged videotape evidence. There are two relevant encounters within which the parties' version of events differ in material respect. The first occurred after Adkins followed Boose to his cell, where, he asserts, she struck him as he was attempting to get water to take his medication. The second occurred after Boose followed Adkins into the dayroom.

### 3. Initial encounter in Boose's cell

In his complaint, Boose alleges that Adkins assaulted him by "taking the cup from me while I was drinking to finish taking my meds." (ECF No. 2 at 5). Adkins, by contrast, asserts that "the video footage is unequivocal evidence that [Boose] disobeyed orders from a correctional officer and then attacked her." (ECF No. 50 at 18). In his response to Adkins's request for summary judgment, Boose asserts that, rather than reaching for his cup, Adkins struck him in the face while he was in his cell taking his medication. (ECF No. 65 at 1). Boose reiterates this allegation in his response to Defendants' reply, saying he was "hit w/a closed fist in his cell with (strong force)." (ECF No. 67 at 2).

The videotape reveals that at 10:26:36, while standing within the doorway of Boose's cell, Adkins makes a sudden movement, swiftly reaching her outstretched arm in Boose's direction. Initially, both parties characterized this interaction as consisting of Adkins's attempt to take a cup from Boose, with Boose believing Adkins's attempt to grab the cup constituted assault. (ECF Nos. 2 at 5, 50 at 17). However, Boose later asserted that Adkins in fact struck him in the face during this interaction. (ECF No. 65 at 1).

Boose is only partially visible during this exchange, and the exact outcome of

Adkins's extension of her arm is not visible. The action is more consistent with the parties' initial characterization, that Adkins attempted to grab Boose's cup from him, as the action most closely resembles a snatching or grabbing motion. Adkins does not draw back her arm or shift her weight as consistent with a strike or blow, but rather swiftly moves forward an already outstretched arm. This is additionally consistent with Boose's initial representation in his complaint; the allegation that Adkins struck him in his cell was only added following Defendants' request for dismissal. It is clear that forcibly snatching a cup from the hand of an inmate, no matter how impolitely done, would not constitute cruel and unusual punishment. However, given that Boose is not visible during this interaction, and the exact result of Adkins's extension of her arm is not unequivocally revealed by the videotape evidence, the undersigned will briefly consider whether Boose states a claim under the Eighth Amendment if it is assumed that Adkins's did in fact strike Boose in the face during this encounter.

As noted above, a plaintiff attempting to present a claim based on an allegation of excessive force employed in violation of the Eighth Amendment's proscription against cruel and unusual punishment must establish both an objective and subjective component. *Brooks*, 924 F.3d at 112. The objective component, requiring a showing that the force employed was "sufficiently serious to establish a cause of action" is "not a high bar, requiring only something more than '*de minimis*' force." *Id.* (quoting *Hudson*, 503 U.S. at 10).

The Supreme Court has stated that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson,* 503 U.S. at 9). Accordingly, a prisoner "who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at

38 (quotation omitted). However, in *Wilkins*, the Supreme Court also admonished against conflating an analysis of *de minimis* injury with that of a *de minimis* application of *force,* holding that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.*

Courts have reached differing conclusions regarding whether a single punch, slap, or other offensive blow, can in some instances be a sufficiently serious application of force to meet the objective component of an Eighth Amendment claim. *Compare Atkins v. Glaser*, No. 1:18CV354 (LMB/TCB), 2019 WL 459021, at *3 (E.D. Va. Feb. 5, 2019) (single attempt to shove prisoner's head into wall sufficiently states a claim of excessive force); *Cox v. Fischer*, 248 F. Supp. 3d 471, 481 (S.D.N.Y. 2017) ("[A] juror could reasonably conclude that a punch to the jaw is not a routine exercise of force, but rather one that may result in serious and lasting physical injury."); *Thomas v. Stalter*, 20 F.3d 298, 302 (7th Cir. 1994) (single unprovoked punch to the face objectively serious); *Wright v. Gess*, No. 18-CV-03338-STV, 2019 WL 4464142, at *6 (D. Colo. Sept. 18, 2019) (single unwarranted shove to the ground sufficiently serious) *with Evans v. Balmer,* No. 13-CV-805(MAT), 2017 WL 1106939, at *6 (W.D.N.Y. Mar. 24, 2017) (single blow not objectively serious) (collecting cases); *Brandon v. Nazorovich*, No. 2:02CV343, 2009 WL 891873, at *9 (W.D. Pa. Mar. 31, 2009) (same); *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1009 (S.D. Ohio 2017) (single shove which resulted in bump to head not objectively serious); *Phelan v. Thomas*, No. 9:10-CV-11 (GLS/DJS), 2017 WL 519246, at *4 (N.D.N.Y. Feb. 8, 2017) ("The conduct alleged here—two or three open-handed slaps that caused no lasting injury—falls short of the objective component of an Eighth Amendment excessive force claim."); *Neal v. Miller*, 778 F. Supp. 378, 383

(W.D. Mich. 1991) ("[F]ederal courts have routinely held that a single push, shove, punch, or blow by a prison guard simply does not rise to constitutional dimensions.") (collecting cases).

While the foregoing cases reveal that a single malevolent blow may in some instances constitute an objectively serious deprivation, it is clear that, in this case, any blow delivered by Adkins to Boose while he was in his cell cannot constitute more than a *de minimis* application of force. *See e.g. Lewis v. Huebner*, No. 17-CV-8101 (KMK), 2020 WL 1244254, at *6 (S.D.N.Y. Mar. 16, 2020) ("Courts have repeatedly held that a single slap that results in no injury constitutes unactionable, *de minimis* force.") (collecting cases); *Askew v. Long*, No. 4:09CV1678, 2010 WL 419434, at *1 (N.D. Ohio Jan. 29, 2010) (single slap to the face without any evidence of injuries insufficient to state Eighth Amendment claim); *Hall v. Billups*, No. 2:14CV196-WHA, 2017 WL 9471783, at *3 (M.D. Ala. Feb. 28, 2017), *report and recommendation adopted*, No. 2:14CV196-WHA, 2017 WL 1170859 (M.D. Ala. Mar. 29, 2017) (same); *Leary v. Livingston Cty.*, 528 F.3d 438, 443 (6th Cir. 2008) (single "karate chop kind of deal" blow to back of neck not objectively serious where no injury alleged); *Jackson v. Buckman*, 756 F.3d 1060, 1068 (8th Cir. 2014) ("Viewing the evidence in the light most favorable to [the plaintiff], Nurse Anderson's act of hitting Tucker's nose ... was a *de minimis* use of force that is not actionable under the Due Process Clause."). It is clear from the videotape evidence that, even assuming Adkins did in fact strike Boose in the face, rather than merely attempt to grab the cup from his hand while he was standing in the cell, such an action did not constitute more than *de minimis* force. Adkins's hand was already extended when she moved it in Boose's direction, and she did not draw her arm back, nor shift her body in a way that would indicate substantial force was put

26

behind any strike delivered. Viewing the videotape makes it clear that any blow delivered by Adkins would have consisted of minimal force, one that could not possibly constitute more than *de minimis* force.

Viewing the videotape evidence in the light most favorable to Boose, it is clear that Adkins, at most, administered a single light blow to his face before swiftly exiting the cell and walking away. It is important to note that the protections provided by the Eighth Amendment do not perfectly overlap with societal expectations of decency and appropriate behavior. The Eighth Amendment render every malicious touch by a correctional officer to be a constitutional violation, and protects only against the application of force which is of the sort so "repugnant to the conscience of mankind," that it constitutes cruel and unusual punishment. *Wilkins*, 559 U.S. at 38 (quotation omitted). A conclusion that Adkins did not violate the Eighth Amendment by administering a single strike or slap with minimal force does not condone such action, nor suggest that she behaved appropriately and discharged her duties professionally; it simply means that, assuming such a blow was delivered by her, it was not substantial enough to rise to the level of a constitutional violation.

While the Fourth Circuit has provided clear guidance that meeting the objective component of an Eighth Amendment excessive force claim "is not a high bar" and requires only the "nontrivial" application of force, the undersigned **FINDS** that the videotape evidence makes clear that Boose cannot overcome even this minor barrier as any force applied by Adkins in this instance was minimal and not objectively serious. *Brooks,* 924 F.3d at 112.

### 4. Subsequent confrontation

The second encounter identified by Boose as giving rise to an excessive force

claim under the Eighth Amendment occurred shortly after the first, when Boose followed Adkins out of his cell and confronted her in the dayroom. Boose alleges that during this encounter, Adkins punched him in the chest, and then struck him two more times. In an attempt to defend himself, Boose grabbed her by the shirt "to hold her back." (ECF No. 2 at 5). Defendants believe that the videotape reveals, contrary to Boose's assertions, that Boose is the aggressor in this encounter. (ECF No. 50 at 17-18).

The videotape evidence shows Boose and Adkins confront each other only after Adkins left Boose's cell and he pursued her. The two are engaged in a heated confrontation, with Boose standing extremely closely to Adkins. At 10:26:42, Adkins places both hands on Boose's chest and shoves him backward, creating space between herself and Boose. Boose continue to gesticulate angrily, and again steps toward Adkins, prompting her to push him backward a second time at 10:26:44. The two then engage in a struggle where Boose either strikes or forcefully shoves Adkins several times as Adkins continues to try to drive Boose away from her. Beginning at 10:26:50.130, Boose delivers, in quick succession, several strikes or forceful pushes to Adkins with his left arm, causing her, at 10:26:51, to fall against a metal table in the dayroom. The two continue to grapple and argue with one another until 10:27:02 when other correctional officers arrive and escort Boose off-frame.

Assuming *arguendo* that Adkins's use of force during this confrontation met the objective prong of an Eighth Amendment claim, Boose is clearly unable to establish that her actions violated the subjective requirement, as the videotape evidence blatantly contradicts Boose's version of events and demonstrates that Adkins's use of force did not violate the Eighth Amendment's ban on cruel and unusual punishment as a matter of law. Unlike the objective component, the subjective component of an Eighth

Amendment excessive force claim is "a demanding standard." *Brooks*, 924 F.3d at 112. To establish that a correctional officer's actions violated the subjective component, a plaintiff must show that they acted with a "sufficiently culpable state of mind." *Iko*, 535 F.3d at 239. Specifically, "'wantonness in the infliction of pain.'" *Brooks*, 924 F.3d at 112 (quoting *Iko*, 535 F.3d at 239). The question of whether an action demonstrates this wantonness in state of mind "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 113 (quoting *Whitley*, 475 U.S. at 320).

The Fourth Circuit has identified the following four nonexclusive factors to be considered when analyzing the subjective component of an excessive force claim:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321). In Boose's telling of this encounter, Adkins began assaulting him without provocation, and he applied only enough force to protect himself from her onslaught. (ECF No. 2 at 5). To the contrary, the video evidence makes clear that Boose was the aggressor in this confrontation. After Adkins walked away from Boose's cell, trying to close the cell door behind her, an uninjured Boose opened the door and purposefully followed Adkins. He was clearly angry and displayed aggressive behavior by standing in close proximity to Adkins while gesticulating and confronting her. He refused to retreat despite Adkins twice pushing him away from her in an attempt to create distance. Although the words exchanged between the two are not recorded, Adkins obviously ordered Boose to return to his cell, pointing him toward the cell and nudging him in that direction as she spoke. When the

conflict escalated, Boose engaged in threatening behavior by striking or violently pushing Adkins several times, causing her to fall against a metal table. Even viewing the videotape in the light most favorable to Boose, it is clear that Adkins's use of force was "applied in a good-faith effort to maintain or restore discipline" or to protect herself, and was not done "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quotation omitted).

"'When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain.'" *Thompson v. Shelton*, 541 F. App'x 247, 249 (4th Cir. 2013) (quoting *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir.1998)) (*per curiam*). In this case, when considering the factors identified by the Fourth Circuit, it is evident that Boose cannot meet that standard as a matter of law in view of the uncontroverted videotape evidence.

The first factor, the need for the application of force, does not weigh in Boose's favor. *Iko*, 535 F.3d at 239 (citing *Whitley*, 475 U.S. at 321). Boose was, by his own admission, engaged in a confrontation with Adkins during the incident. As previously stated, the videotape shows Boose approaching Adkins and standing in close proximity to her, all the while angrily speaking and gesticulating, as Adkins tried to make Boose return to his cell. Boose resisted Adkins's attempts to move Boose away from her, and then escalated the conflict by shoving and striking at Adkins, causing her head to snap back and then her torso to hit a metal table. Courts in this Circuit have routinely held that law enforcement and correctional officers may deploy force in response to threatening, disruptive, or assaultive behavior. *See Allen v. Anderson,* No. 5:13-CT-

3238-FL, 2017 WL 4126345, at *10 (E.D.N.C. Sept. 18, 2017), *order corrected on denial of reconsideration*, No. 5:13-CT-3238-FL, 2018 WL 1542232 (E.D.N.C. Mar. 29, 2018), *aff'd*, 736 F. App'x 416 (4th Cir. 2018) (deployment of pepper spray justified to forestall threat of assault); *see also Washington v. Lambert*, No. 3:12-CV-292-RJC, 2014 WL 4667078, at *5 (W.D.N.C. Sept. 18, 2014) (use of force appropriate when prisoner refused to obey orders, and lunged threateningly toward correctional officer); *Wood v. Rubenstein*, No. 5:12CV174, 2014 WL 6977624, at *6 (N.D.W. Va. Dec. 9, 2014) (correctional officers actions in shoving plaintiff against wall and pushing to ground were justified by plaintiff's attempts to remove cuffs and pull away during escort); *Adkins v. McDonald*, No. 5:14-CT-3169-F, 2016 WL 7655775, at *4 (E.D.N.C. Feb. 23, 2016), *aff'd*, 667 F. App'x 395 (4th Cir. 2016) (baton strike justified where plaintiff disobeyed orders, insulted guards, and grabbed correctional officer's wrist); *Short v. Walls*, No. 07–00531, 2009 WL 914085, at *9 (S.D.W.Va. Mar. 31, 2009) ("The administration of a beating for purposes other than to restore or maintain prison security or the plaintiff's own safety violates clearly established law."); *Gorham v. Massey*, No. 5:10-CT-3058-FL, 2012 WL 828153, at *7 (E.D.N.C. Mar. 9, 2012) (use of force was proportional where plaintiff was acting in a "disruptive manner" and disobeying direct orders). The need for the application of force when an inmate engages in disruptive behavior and initiates physical confrontation with a correctional officer is clear. The first factor thus weighs against Boose.

The second factor asks a court to consider "the relationship between the need and the amount of force that was used." *Iko*, 535 F.3d at 239. This factor also decisively weighs against Boose. "When force is needed to keep order, correctional officers may have little time for considered reflection and must quickly and decisively balance the

need to maintain order and restore discipline through force against the risk of injury to inmates." *Wheeler v. Fritz*, No. CIV.A. RBD-14-2727, 2015 WL 4485436, at *10 (D. Md. July 20, 2015) (citing *Hudson*, 503 U.S. at 6). The tape confirms that the confrontation between Boose and Adkins escalated quickly. Boose followed closely behind Adkins after she tried to close his cell door and, while the videotape does not contain audio, it is clear Boose refused both commands and physical attempts by Adkins to make him leave her immediate physical space. Boose responded to Adkins's physical attempts to push him away by striking her, or, at the very least, by shoving her. Under these circumstances, facing what appeared to be an imminent threat to her safety, Adkins's response was proportional to the threat presented. Adkins did not deploy more force than was necessary to avert the threat presented by Boose, and did not continue to deploy force after Boose ceased presenting an imminent threat. A brief deployment of force in response to disruptive and threatening behavior does not rise to the level of wanton infliction of pain that is required to establish a violation of the Eighth Amendment. *See e.g. Duncan v. McKenzie*, No. CV GLR-15-736, 2016 WL 1597103, at *6 (D. Md. Apr. 20, 2016), *aff'd*, 670 F. App'x 119 (4th Cir. 2016) ("Force is applied in a good faith effort to restore order and discipline when a corrections officer administers a single burst of pepper spray after a verbal confrontation initiated by an inmate.") (citing *Trusell v. Bailey*, No. 5:09CV101-RJC, 2011 WL 972571, at *7 (W.D.N.C. Mar. 15, 2011)).

The third factor, "the extent of any reasonably perceived threat that the application of force was intended to quell," likewise favors Adkins. *Iko*, 535 F.3d at 239. As noted, Adkins reasonably perceived that Boose presented an imminent threat to her safety when he began arguing with her, refused her attempts to make him stand back, and responded to her attempts by deploying force himself. Contrary to Boose's assertion

that he only attempted to protect himself, he continually escalated the conflict by advancing toward Adkins even after she tried to get him to return to his cell. Correctional officers are certainly justified in deploying force in response to the threat of physical harm. Accordingly, the third factor is not in Boose's favor.

Finally, the fourth factor, which considers any efforts made to temper the severity of the force employed, also suggests that Adkins's conduct was "a good-faith effort to maintain or restore discipline." *Wilkins*, 559 U.S. at 37. Adkins did not continue to strike or push Boose after he ceased pressing toward her and desisted from using physical force against her. Moreover, she did not deploy more force than was necessary to protect herself from the reasonably perceived threat. The use of force was clearly not wanton or employed with the intention of causing pain rather than in pursuit of valid penological goals, namely the need for correctional officers to ensure their own safety in a frequently dangerous environment. *See, e.g., Graham v. Connor*, 490 U.S. 386, 396-97 (1989) ("[P]olice officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation" and holding that courts must take that circumstance into account when considering whether a constitutional violation occurred); *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999) (holding that when "dealing with ... agitated detainees prison officials must not be forced to walk a tightrope" and be subjected to unforgiving after-the-fact scrutiny); *Medrano Ortiz v. Solomon*, No. 5:15-CT-3251-FL, 2019 WL 1245779, at *9 (E.D.N.C. Mar. 18, 2019), *aff'd*, 778 F. App'x 236 (4th Cir. 2019) ( finding that "in light of the deference prison officials should be afforded in tense, uncertain situations" correctional officers decision to "slam" inmate into ground in response to inmate's refusal to follow order was not excessive). Accordingly, none of the

factors support a claim for excessive force under the Eighth Amendment.

The uncontroverted videotape evidence shows that Boose engaged in threatening behavior and Adkins responded to that behavior proportionally. It would not be reasonable for a jury to conclude that Adkins's actions in responding to Boose's threatening behavior, behavior which he persisted in and escalated despite Adkins's repeated attempts to make Boose return to his cell, was inflicted for the purpose of causing pain rather than in a good-faith effort to restore order. Accordingly, the undersigned **FINDS** that, as the undisputed evidence conclusively establishes that Adkins did not use excessive force, Boose is unable to state an Eighth Amendment claim against this Defendant, and summary judgment is appropriate on this ground.

### B. The WRJ is not a proper defendant in this action

The WRJ asserts it is entitled to dismissal because it is both not a "person" as required to be sued under § 1983, and because of the doctrine of sovereign immunity. (ECF No. 50 at 4-5). In *Will v. Mich. Dept. of State Police,* the Supreme Court considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of ... § 1983." *Id.*, 491 U.S. 58, 60 (1989). Examining the language and purpose of the statute, the Supreme Court ultimately concluded that Congress did not intend to subject States to liability for deprivations of civil liberties, when such suits would have been barred by the States' sovereign immunity. *Id.* at 66. The holding in *Will* applied not only to lawsuits against the State, itself, but also to suits against "public entities and political subdivisions" that were an "arm or alter ego" of the State. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Moor v. Alameda County,* 411 U.S. 693, 717 (1973)).

The law is well settled that regional jails in West Virginia, such as the WRJ, are

arms of the State of West Virginia. *See Hall v. Pszczolkowski*, No. 5:14CV150, 2015 WL 6742107, at *3 (N.D.W. Va. Nov. 4, 2015) (holding that "state detention facilities are 'arms of the state'") (citing *Preval v. Reno*, 203 F.3d 821 (Table), No. 99-6950, 2000 WL 20591, *1 (4th Cir. Jan. 13, 2000) (unpublished *per curiam*)); *see, also, Kinder v. PrimeCare Med., Inc.,* No. 3:13–31596, 2015 WL 1276748, at *2 (S.D.W. Va. Mar. 19, 2015) (dismissing the WRJ from § 1983 suit on Eleventh Amendment grounds); *Skaggs v. W. Reg'l Jail,* No. 3:13–3293, 2014 WL 66645, at *1, *4 (S.D.W. Va. Jan. 8, 2014) (dismissing the WRJ from § 1983 suit and adopting finding that the WRJ is arm of the State for Eleventh Amendment purposes). Therefore, the undersigned **FINDS** that the WRJ, as an arm of the State, is not a "person" subject to suit under § 1983 and is entitled to dismissal on this ground. *See Roach v. Burch,* 825 F.Supp. 116 (N.D.W. Va. 1993); *also*, *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 (1989); *Cantley v. Western Regional Jail and Correctional Facility Authority,* 728 F. Supp.2d 803 (S.D.W. Va. 2010) (finding that the West Virginia Regional Jail Authority and Correctional Facility is not a "person" for purposes of a claim for money damages under § 1983.); *Lewis v. Western Reg'l Jail,* No. 3:11–cv–01016, 2012 WL 3670393, at *5 (S.D.W. Va. July 24, 2012) (recognizing that "the WRJ is not a person subject to suit under § 1983"), *report and recommendation adopted by* 2012 WL 3726874 (S.D.W. Va. Aug. 27, 2012); *and Dement v. Summers Cnty. Courthouse,* No. 5:13–cv–08899, 2015 WL 461560, at *3 (S.D.W. Va. Feb. 3, 2015) (finding that Southern Regional Jail was not subject to § 1983 suit).

The WRJ is also entitled to dismissal based on the sovereign immunity provided by the Eleventh Amendment to the United States Constitution ("Eleventh Amendment"), which states in relevant part: "The Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10−50−HMH−PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will,* 491 U.S. at 70); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir.2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir.1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2-3 (S.D.W. Va. June 1, 2016) (holding that insurance

provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the State of West Virginia has not waived its sovereign immunity in this type of suit, and there is no indication that the State would do so now. *See Kinder*, 2015 WL 1276748, at *7; *Skaggs*, 2014 WL 66645, at *5; *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013); *Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W. Va. 1992). Consequently, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73). In *Will*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. 491 U.S. at 65. Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government … unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that

37

Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp.3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the WRJ is not a state officer, but rather a state entity, the third exception to Eleventh Amendment immunity is likewise inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that lawsuit must name state official as defendant, not state agency);

38

*Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction").

Accordingly, since none of the exceptions apply, the undersigned **FINDS** that the WRJ is shielded by the Eleventh Amendment's sovereign immunity from Boose's § 1983 case and is entitled to dismissal on this ground.

### C. Access to courts and grievance procedure

Boose asserts in his Amended Complaint that "various staff" at the WRJ conspired to deprive him of constitutional rights following the incident with Adkins. (ECF No. 23 at 1-2). Boose claims that "numerous jail personnel" prohibited him from contacting his "counsel-of-record" to inform counsel of Adkins's assault. (*Id.* at 2). Boose also stated in the Amended Complaint that Flemings directed these activities. (*Id.*). The undersigned previously considered this claim as asserted against Flemings and concluded that it had no merit, whether considered as a violation of the Sixth Amendment, or as a claim that Boose was denied meaningful access to the courts. (ECF No. 45 at 6-8). To the extent that Boose intends to bring these claims against Adkins and Woods, he is unable to do so for the same reasons that the claim was unavailing when asserted against Flemings.

As noted in the PF&R recommending dismissal of Boose's claims against Flemings, (*Id.* at 6-7), Boose cannot allege a violation of the Sixth Amendment because the protections provided by that Amendment apply only to criminal prosecutions, and Boose did not have a constitutional right to confer with a lawyer regarding the alleged

assault by Adkins. *See Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975) (discussing that plaintiffs do not have a right to counsel in § 1983 cases) *see also Kaufman v. United States*, No. CV 1:12-0237, 2014 WL 12660117, at *1 (S.D.W. Va. Apr. 18, 2014) ("There is no constitutional right to appointment of counsel in civil cases, and the decision whether to appoint counsel is within the discretion of the Court."); *Cannon v. Hull*, No. 1:16CV359 (LMB/TCB), 2017 WL 359184, at *8 (E.D. Va. Jan. 23, 2017), *appeal dismissed*, 693 F. App'x 187 (4th Cir. 2017) ("Although plaintiff has created a factual dispute as to whether or not he was able to call his attorney, this disputed fact is not material as plaintiff has not established that he suffered a harm as a result of not being able to contact his attorney because he has not identified any legal matter that was pending at the time or otherwise explained why he needed to contact his attorney."). Therefore, the undersigned **FINDS** that Boose's claim that his Sixth Amendment right to counsel was violated by Defendants cannot succeed as a matter of law and Defendants' request for summary judgment should be granted as to this claim.

While Boose is unable to allege a violation of the Sixth Amendment, his claim that he was denied access to a lawyer can be construed as an allegation he was denied meaningful access to the courts. *See Cannon,* No. 1:16-CV-359 (LMB/TCB), 2017 WL 359184, at *7 (construing § 1983 plaintiff's statement that he was not allowed to call his attorney while incarcerated as a claim that he was denied meaningful access to the courts). "Inmates have a right to meaningful access to the courts, which requires that individuals acting under color of state law cannot hinder an inmate in his efforts to pursue a legal claim." *Id.* (citing *Bounds v. Smith*, 430 U.S. 817, 822 (1977)) and *Lewis v. Casey*, 518 U.S. 343 (1996)). The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing

everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355. Rather, inmates cannot be impeded from attacking their sentences, directly or collaterally, or challenging the conditions of their confinement. *Id*. The Supreme Court has "extended this universe of relevant claims only slightly, to civil rights actions—*i.e.,* actions under 42 U.S.C. § 1983 to vindicate basic constitutional rights." *Id.* at 354. However, "[i]mpairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

In order to assert a colorable "access to the courts" claim, a plaintiff must not only allege facts demonstrating that his access was impeded, but also must allege facts showing that he suffered actual injury or specific harm to his litigation efforts resulting from such impediment. *Lewis*, 518 U.S. at 351; *Michau v. Charleston Cty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006); *Prince v. Crawford*, No. 3:16-CV-02317, 2017 WL 2991350, at *10 (S.D.W. Va. May 31, 2017), *report and recommendation adopted,* No. CV 3:16-2317, 2017 WL 2991344 (S.D.W. Va. July 13, 2017) (collecting cases); *Hundley v. Thomas*, No. 5:17-CT-3110-BO, 2017 WL 6759609, at *1 (E.D.N.C. Nov. 17, 2017), *aff'd,* 719 F. App'x 250 (4th Cir. 2018). "A plaintiff must make specific allegations as to the actual injury sustained," and "[c]onclusory allegations are not sufficient in this regard." *Winston v. Mannis*, No. 7:18-CV-00226, 2019 WL 1601493, at *3 (W.D. Va. Apr. 15, 2019) (citations omitted).

As was the case when this claim was considered as asserted against Flemings, Boose fails to explain how he suffered any actual injury or specific harm to his litigation efforts. This failure was explicitly outlined in the PF&R recommending dismissal of Boose's claim against Flemings. (ECF No. 45 at 8). Despite Boose being made aware of the necessity of showing an actual negative impact on his litigation efforts in order to

successfully pursue this claim, and despite the fact that Boose was granted multiple extensions of time to prepare a response, Boose provided no additional allegations with respect to this claim as asserted against Adkins and Wood.

In order to succeed on a claim that prison staff interfered with his access to the courts, Boose must provide more than a cursory assertion that he was denied access, and must allege that the impediment created by intransigent prison staff caused some appreciable harm to his attempt to access the courts. *See, e.g., Kelly v. Lewis*, No. 1:12CV1385, 2013 WL 3322361, at *2 (M.D.N.C. July 1, 2013) ("Plaintiff alleges no actual injury and has accessed this Court through multiple filings. Therefore, his access to the courts claim should be dismissed."); *Winston*, 2019 WL 1601493, at *3 ("In support of his access to courts claim, [the plaintiff] alleges that he has had cases 'delayed' and 'dismissed,' but he does not provide any specific facts concerning the type(s) of cases, the claims he raised, or how the defendants' actions caused the cases to be delayed or dismissed."); *Ajaj v. United States*, 479 F. Supp. 2d 501, 542–43 (D.S.C. 2007) (dismissing lack of access to courts claim because no allegation of prejudice resulting from the denial of access).

Boose has continued to fail to assert that he suffered any actual prejudice, or that his ability to institute and pursue any specific legal claim has been impaired by Defendants' actions. Boose does not identify any legal claim he wished to, but was thwarted from, pursuing. Boose submitted this complaint on November 19, 2018, less than one month after the incident which forms the basis of his complaint occurred, (ECF No. 2 at 8), and has demonstrated no difficulty imposed by the Defendants in responding to motions and presenting his legal claims. Accordingly, the undersigned **FINDS** that Boose is unable to prevail on this claim and Defendants' motion for summary judgment

should be granted.

### D. Telephone, Law Library, Computer (Kiosk), Grievance Procedure, and Mail

Boose stated in response to Flemings's dispositive motion that Flemings and other unidentified staff members at his direction showed "deliberate indifference" by "hindering and obstructing [Boose] from being able to file the necessary electronic grievances and follow up appeals and to have adequate access to the law library, phones, and the Jail computer system (Kiosk) which [were] not 'Jail privileges' but [his] rights to have adequate access to these things." (ECF No. 29 at 1). He further states that his "mail would not get to [him], nor sent from the Jail." (*Id.* at 2).

Contrary to Boose's belief, prisoners do not have a freestanding federal or constitutional right to access the telephone, computer, law library, or grievance procedure. *United States v. Alkire*, 1996 WL 166400, at *1 (4th Cir. 1996) ("[T]here is no constitutional or federal statutory right to use of a telephone while in prison."); *Winston v. Mannis*, No. 7:18-CV-00226, 2019 WL 1601493, at *3 (W.D. Va. Apr. 15, 2019) (granting motion to dismiss § 1983 that officer denied inmate access to the telephone because "an inmate has no federal legal right to use a telephone."); *Harris Joiner v. Solomon*, No. 1:17-CV-47-FDW, 2017 WL 663248, at *2 (W.D.N.C. Feb. 16, 2017) ("[T]here is no constitutional requirement that an inmate have free access to a telephone."); *Johnson v. Johnson*, No. CV 1:17-00608, 2018 WL 3629822, at *2 (S.D.W. Va. July 31, 2018) (collecting cases stating that the denial of the use of telephone in prison fails to state a colorable claim under § 1983); *Lewis*, 518 U.S. at 351 (stating that there is not "an abstract, freestanding right to a law library or legal assistance"); *Prince v. Crawford*, No. 3:16-CV-02317, 2017 WL 2991350, at *13 (S.D.W. Va. May 31, 2017),

*report and recommendation adopted,* 2017 WL 2991344 (S.D.W. Va. July 13, 2017) ("Claims based upon deficiencies in a prison grievance procedure are not cognizable under § 1983 because 'the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.'") (quoting *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)"); *McClary v. Hafeze*, No. 1:19CV1, 2019 WL 1644957, at *2 (M.D.N.C. Feb. 5, 2019), *report and recommendation adopted,* 2019 WL 1641156 (M.D.N.C. Apr. 16, 2019) ("The alleged obstruction of Plaintiff's grievances does not state any claim for relief under § 1983 because there is no substantive due process right to a prison grievance procedure."); *Nolan v. Clarke,* No. 7:18-cv-00408, 2019 WL 4923953, at *6 (W.D. Va. Oct. 4, 2019) ("[I]nmates have no constitutional right to file a grievance or access any such procedure voluntarily established by the state.") (citing *Booker v. South Carolina Dept. of Corrections*, 855 F.3d 533, 541 (4th Cir. 2017). To the extent that Boose believes the grievance process was inadequate, he can pursue redress only for the alleged constitutional violations that were the subject of the administrative grievance, not for the inadequacies or denial of a grievance procedure itself. *See Prince*, 2017 WL 2991350, at *13 ("Thus, if [the plaintiff's] grievances concerned actions which injured his constitutionally protected interests, he could file a claim under § 1983 to seek redress for that injury; however, § 1983 does not provide him an avenue to seek redress for the state's failure to address his grievances.")*; Oliver v. Powell*, 250 F. Supp. 2d 593, 602–03 (E.D. Va. 2002) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.").

While prisoners do have a First Amendment right to communicate with the outside world, they do not have a right to a particular means of access. *Barbati v. Bureau of Prisons*, No. 5:11-cv-0778, 2012 WL 4119300, at *6 (S.D.W. Va. Aug. 22, 2012), *report and recommendation adopted,* 2012 WL 4119865 (S.D.W. Va. Sept. 19, 2012) (citations omitted); *Prince*, 2017 WL 2991350, at *12. Boose implies that he was entirely restricted from communicating with the outside world because, in addition to not being able to use the telephone and other amenities, he was also not able to send or receive mail at the Jail. (ECF No. 29 at 2). However, his conclusory allegations are clearly belied by the record. Boose mailed his original complaint and *in forma pauperis* application while incarcerated at the Jail. (ECF Nos. 1, 2). Therefore, Boose's claim that he was not able to send or receive mail in the Jail is unequivocally disproven by his own pleading.

Boose asserted that these deprivations were largely attributable to Flemings, who has since been dismissed from this case. The undersigned concluded Flemings should be dismissed because, among other reasons, "other than vague allegations that Flemings informed staff members to ignore and deny Boose's requests for the telephone, kiosk, and law library, Boose provide[d] no factual foundation to maintain an action against Flemings." (ECF No. 45 at 11). Despite notice of this necessity to maintain such a claim, Boose has provided no additional allegations with respect to the remaining Defendants, and his pleadings are devoid of any factual basis to conclude that either Wood or Adkins personally restricted his access to these amenities.

Because Boose's allegation that he was denied access to various prison amenities and services, and afforded only a defective grievance procedure, does not implicate a violation of constitutional right or federal law, and, furthermore, because Boose fails to assert any factual basis for finding the remaining Defendants liable for any such

deprivation, the undersigned **FINDS** that Boose cannot succeed on these claims as a matter of law.

### E. Investigation of incident

### 1. Failure to investigate

Finally, Boose objects to prison staffs' investigation of the incident, which he believes was inadequate due to staffs' failure to take pictures of the incident or provide medical and psychological treatment. (ECF No. 67 at 2). Boose believes he was unjustly punished by being disciplined following the incident and transferred to an "administrative segregation" section of the WRJ as part of a scheme by Defendants "to conceal their own onerous behavior and unconstitutional conduct." (ECF No. 23 at 1-3).

Boose objects to the fact that "administration" at the WRJ failed to "properly investigate the situation by providing picture(s) of all (parties)," and believes that this failure reveals that Defendants are attempting to suppress "what took place to [Boose]." (ECF No. 65 at 3). However, Boose has no federal or constitutional right to a particular type of investigation or investigatory practice. *See Battle v. N. Carolina Dep't of Pub. Safety*, No. 1:17-CV-174-FDW, 2018 WL 4620619, at *8 (W.D.N.C. Sept. 26, 2018) (dismissing § 1983 claim that defendants failed to adequately and truthfully investigate plaintiff's complaints about various acts of deliberate indifference and retaliation because there is no constitutional right to an investigation); *Mitchell v. Murray*, 856 F. Supp. 289, 294 (E.D. Va. 1994) (stating that there is not a "fundamental right requiring prison administrators investigate prisoner complaints."); *Jones v. Ervin*, No. 2:19-CV-385-RMG, 2019 WL 2241860, at *2 (D.S.C. May 24, 2019) ("Plaintiff has failed to state any valid claims against the Defendant officers [because the] allegations, that Plaintiff informed them of the retaliation and they allegedly ignored him and failed to investigate,

do not make out a § 1983 claim."). Furthermore, Boose has not explained how pictures or a medical investigation conducted after the incident would have exonerated him in any way. He does not allege that he suffered any injuries which required medical attention or would, if photographed, alter the nature of an investigation into the incident. As the encounter with Adkins took place in view of video surveillance cameras, and, as explained above, the videotape evidence reveals that Boose was not the victim of an unjustified assault as he asserts, the probative value of any photographs would be marginal. Accordingly, the undersigned **FINDS** that Boose's claim Defendants failed to adequately investigate the incident should be dismissed.

### 2. Placement in segregation

Boose additionally alleges that he was improperly punished for the assault by being placed in administrative segregation and though he "wrote out an appeal for the assault charge" two weeks prior to filing the complaint, he did not receive a response. (ECF No. 2 at 6). Boose later asserted that his appeal was denied via an "untimely" response from Woods. Boose does not provide any further details regarding the disciplinary proceedings or his attempt to challenge the result.

To the extent that Boose's objections to his placement in administrative segregation should be construed as a due process challenge to the WRJ's disciplinary procedures, Boose clearly fails to put forth a valid claim. In order to raise a constitutional challenge to disciplinary proceedings in a state facility, Boose must demonstrate that he was "deprived of a state-created liberty interest protected by the Due Process Clause." *Prince*, No. 3:16-CV-02317, 2017 WL 2991350, at *14 (S.D.W. Va. May 31, 2017). Boose may do so by showing either "(1) the conditions of his disciplinary detention exceeded the sentence imposed in such an unexpected manner as to give rise to protection by the

Due Process Clause or (2) the confinement in disciplinary detention created an atypical or significant hardship in relation to the ordinary incidents of prison life." *Id.* (citing *McNeill v. Currie*, 84 F. App'x. 276, 277 (4th Cir. 2003)).

Boose does not attempt to show that either condition applies to the punishment he received following the confrontation with Adkins. Boose does not contend, and there is nothing in the record to suggest, that his placement in administrative segregation exceeded or extended his original sentence in a way that would give rise to an independent due process claim. Boose additionally does not attempt to demonstrate that his placement in administrative segregation "imposed such an atypical hardship on [him] *vis a vis* ordinary prison life that [he] possessed a liberty interest in avoiding it." *Beverati v. Smith*, 120 F.3d 500, 502–03 (4th Cir. 1997). "Placement in [disciplinary] segregation, by itself, does not create an atypical or significant hardship in relation to the ordinary incidents of prison life." *McNeill, v. Norris*, No. 5:15-CT-3193-D, 2017 WL 1286816, at *2 (E.D.N.C. Apr. 6, 2017) (citing *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015)). "[A] prisoner does not establish a state-created liberty interest in avoiding disciplinary segregated confinement if such confinement '*does not present a dramatic departure from the basic conditions of [the inmate's] indeterminate sentence.*'" *Prieto v. Clarke*, 780 F.3d 245, 254 (4th Cir. 2015), *cert. dismissed*, 136 S. Ct. 319 (2015).

Boose provides no facts which could suggest his placement in administrative segregation resulted in hardships that were so atypical that it gave rise to a due process right to avoid the conditions. Boose provides no relevant details regarding his stay in administrative segregation with respect to either the conditions it imposed, or the length of his stay. Beyond cursory conclusions that the investigation was flawed, and the appeal process inadequate, Boose provides no allegations which suggest a constitutional

violation based on his placement in disciplinary segregation.[2] Accordingly, the undersigned **FINDS** that to the extent Boose's objections to his placement in administrative segregation following the incident with Adkins should be construed as a challenge to the imposition of the disciplinary sanction, Boose is unable as a matter of law to prevail on this claim because he fails to allege any facts suggesting a constitutional violation of his due process rights.

In summation, the undersigned has considered all claims raised by Boose and concluded that none of them are able to survive Defendants' request for summary judgment. As Boose's claims all fail as a matter of law, the undersigned does not address Defendants' claim that Boose failed to properly exhaust his administrative remedies.

## IV.    **Proposal and Recommendations**

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the findings herein and **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' Motion for Summary Judgment, (ECF No. 49); **DISMISS** the complaint as amended against Defendants with prejudice, (ECF No. 2, 23); and **REMOVE** this case from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail)

---

[2] The undersigned additionally notes that based on the recorded videotape surveillance of the incident refuting Boose's representation of the October 23, 2018 incident, his claim that the sanctions imposed against him were unjustified is severely undermined.

from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Chambers, Magistrate Judge Eifert, counsel of record, and any unrepresented party.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED:** May 20, 2020

Cheryl A. Eifert
United States Magistrate Judge

50